# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 23-5171

SHARON A. WESTPHAL, APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 7, 2025)                    Decided January 22, 2026)

*Brandon A. Steele*, of Miami, Florida, for the appellant.

*Erik A. Neff*, with whom *Richard J. Hipolit*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Dustin P. Elias*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before ALLEN, *Chief Judge*, and TOTH and JAQUITH, *Judges*.

ALLEN, *Chief Judge*, filed the opinion of the Court. JAQUITH, *Judge*, filed a dissenting opinion.

ALLEN, *Chief Judge*: Nearly a century ago, Congress created the statutory benefit of special monthly compensation (SMC).[1] SMC is paid to certain veterans in addition to basic rates of VA disability compensation and is predicated "upon consideration of noneconomic factors such as personal inconvenience, social inadaptability, or the profound nature of the disability."[2] Among the several types of SMC that Congress established by statute is what we will refer to throughout this opinion as "SMC(k)." SMC(k) provides compensation for the loss or loss of use of certain anatomical parts, including the loss or loss of use of "one or more creative organs."[3] "The purpose of the statutory award for [SMC(k)] is to account for psychological factors . . . as well as the loss of physical integrity."[4]

---

[1] VA Gen. Coun. Prec. 05-89 (citing Pub. L. No. 522, 71st Cong., 46 Stat. 998 (1930)) (Mar. 3, 1989).

[2] G.C. Prec. 05-89.

[3] 38 U.S.C. § 1114(k).

[4] G.C. Prec. 05-89.

Appellant Sharon A. Westphal served the Nation honorably in the U.S. Air Force from January 1980 to December 1980, and from December 1982 to August 1984.[5] In this appeal, which is timely and over which the Court has jurisdiction,[6] she contests an August 1, 2023, Board of Veterans' Appeals (Board) decision that denied entitlement to SMC(k) based on loss of use of a creative organ (vagina) as a matter of law.[7] The Board explained that appellant is already in receipt of one SMC(k) award for the loss of use of one creative organ (uterus) and that 38 U.S.C. § 1114(k) does not permit more than one SMC(k) award for the loss of use of more than one creative organ. This matter was referred to a panel of the Court to address whether under subsection 1114(k) a veteran can be entitled to more than one award of SMC(k) for the loss of use of more than one creative organ or if, instead, veterans are limited to one award of SMC(k) even if more than one creative organ is at issue.[8] We held oral argument on October 7, 2025, at Rutgers Law School in Camden, New Jersey.[9] We thank the students, staff, and faculty of the law school for their hospitality during our visit.

As we will explain, we hold that the plain language of subsection 1114(k) only authorizes VA to grant one award of SMC(k) to a veteran based on the loss or loss of use of a creative organ, no matter how many creative organs are at issue. To hold otherwise would render the phrase "one or more" that Congress placed into subsection 1114(k) meaningless. And that is something we can't do. So, because the Board did not clearly err when it denied entitlement to an additional award of SMC(k) based on the loss of use of a creative organ (vagina) as a matter of law, we will affirm the Board's decision.

## I. BACKGROUND

Service treatment records reflect that during her service, appellant was diagnosed with and treated for, among other conditions, endometriosis, chronic pelvic pain, and dyspareunia[10] due to

---

[5] Record (R.) at 3275-76.

[6] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[7] R. at 5-13.

[8] For SMC purposes, "the term 'creative organs' in [sub]section 1114(k) means procreative organs" or organs that "assist in the process of reproduction." VA Gen. Coun. Prec. 02-00 (Apr. 3, 2000).

[9] Oral Argument (OA), https://www.youtube.com/watch?v=jU-1hyKtBM4.

[10] Dyspareunia is "difficult or painful sexual intercourse." DORLAND'S MED. DICTIONARY ONLINE (DORLAND'S), https://www.dorlandsonline.com/dorland/definition?id=15262 (last visited Jan. 15, 2026).

a vaginal fissure.[11] Relevant to this appeal, appellant continued experiencing pelvic pain after service, resulting in a total hysterectomy[12] and a bilateral salpingo-oophorectomy.[13] In June 2016, appellant filed a claim seeking service connection for endometriosis and "hysterectomy 2nd to endometriosis [with] SMC."[14]

In October 2016, a VA regional office (RO) (1) denied service connection for endometriosis; (2) granted service connection for total abdominal hysterectomy status post bilateral salpingo-oophorectomy, assigning a 50% disability rating, effective June 6, 2016; and (3) granted entitlement to SMC(k) based on anatomical loss of a creative organ (uterus) due to service-connected total hysterectomy.[15]

In June 2017, appellant filed a claim for service connection for vaginal fissures.[16] In July 2017, a VA examiner diagnosed appellant with dyspareunia and opined that her vaginal fissures were at least as likely as not related to service.[17] In August 2017, the RO granted service connection for dyspareunia with vaginal fissures and assigned a noncompensable rating effective June 22, 2017.[18] Appellant challenged the assigned rating and ultimately appealed to the Board.[19]

In January 2020, the Board granted an initial disability rating of 30% for a service-connected vaginal condition (dyspareunia and vaginal fissure).[20] After further development, including an appeal to the Court, in October 2022, the Board denied an initial disability rating greater than 30% for the service-connected vaginal condition and granted entitlement to a separate initial disability rating of 30% for pelvic pain.[21] In briefing to the Board, appellant explicitly raised

---

[11] R. at 2119-21, 3275-76.

[12] A total hysterectomy is a surgical removal of the uterus and cervix. DORLAND'S, https://www.dorlandsonline.com/dorland/definition?id=24488 (last visited Jan. 15, 2026).

[13] R. at 3144; A salpingo-oophorectomy is the "surgical removal of a uterine tube and ovary." DORLAND'S, https://www.dorlandsonline.com/dorland/definition?id=44497 (last visited Jan. 15, 2026).

[14] R. at 3165-68.

[15] R. at 2158-63.

[16] R. at 2114-17.

[17] R. at 1910, 1992.

[18] R. at 1865-68.

[19] R. at 1806-07 (June 2018 Notice of Disagreement), 1778 (Feb. 2019 Statement of the Case); 1744 (Feb. 2019 Board appeal).

[20] R. at 1630.

[21] R. at 286-95.

the issue of entitlement to an additional SMC(k) award based on the anatomical loss of another creative organ (vaginal condition). [22] In its October 2022 decision, the Board also denied entitlement to SMC(k) for that condition because she was already in receipt of SMC(k) for loss of use of her uterus.[23] Appellant appealed the Board's decision to the Court.

In April 2023, the Court granted the parties' join motion for partial remand in which they agreed that the Board provided inadequate reasons or bases for its determination concerning SMC(k).[24] Specifically, the parties agreed that the Board "did not discuss the portion of [subsection § 1114(k)] that states that the rate of compensation shall be $96 per month 'for each such loss or loss of use,'" and, therefore, did not "address whether loss of use of more than one creative organ warrants a single rate of $96 or a rate of $96 for 'each such loss or loss of use.'"[25]

In August 2023, the Board issued the decision on appeal. In it, the Board denied entitlement to SMC(k) for loss of use of a second creative organ (vagina), finding it was not warranted as a matter of law.[26] The Board explained that appellant has already been awarded SMC(k) for loss of use of one creative organ (uterus) and based on its interpretation of the statute, subsection 1114(k) plainly allows for only one SMC(k) award even if there is loss of use of more than one creative organ.[27] The Board explained that the phrase "for each such loss" refers to the categories of anatomical areas described in subsection 1114(k). While the Board conceded that it would be "possible to receive SMC(k) for separate disorders in the list, such as loss of the buttocks and also for loss of a foot," because "each of these disabilities is separated by a comma and affect different parts of the body," the "'loss or loss of use of one or more creative organs' is a single item in the list."[28] Further, the Board explained that "each individual creative organ is not eligible for SMC (k)" because there is "'loss of use of a creative organ' when there is loss of one testicle or ovary, as well as when there is loss of two testicles or ovaries."[29] While the Board acknowledged that

---

[22] R. at 310-17.

[23] R. at 295.

[24] R. at 51-55.

[25] R. at 51.

[26] R. at 5.

[27] R. at 6-13.

[28] R. at 8.

[29] R. at 9.

4

SMC(k) isn't only available "in cases where the ability to procreate is at issue," the Board still found that this fact does not change the plain text of the statute.[30] This appeal followed.

## II. PARTIES' ARGUMENTS

Both parties agree that the language of subsection 1114(k) is unambiguous.[31] However, each party offers a different interpretation about the meaning of that unambiguous language.

### A. Appellant

Appellant argues that subsection 1114(k) is unambiguous and that the phrase "for each such loss," means that SMC(k) may be awarded more than once, for "each one of those in the preceding list, which includes one or more creative organs."[32] She notes that this interpretation is consistent with the legislative history, as the relevant statutory changes in 1967 were intended to clarify that multiple awards of SMC(k) were possible. She contends that if Congress had intended to limit SMC(k) to only a single loss or loss of use of a creative organ, it would have used stricter language and perhaps would not have altered the pre-1967 language from "a creative organ" to "one or more creative organs."[33]

### B. Secretary

The Secretary agrees with appellant that subsection 1114(k) is unambiguous, but he asserts that the Board did not err when it interpreted "for each such loss" as referring to each of the separate categories of conditions on the list.[34] He asserts that one award of SMC(k) is appropriate and that "one or more creative organs" is just one category of conditions on that list. He maintains that appellant's arguments are without merit because they ignore the "accurate grammatical analysis" the Board provided and rely on strategically placed ellipsis to alter the plain meaning of the statute.[35]

---

[30] R. at 10.

[31] OA at 18:02-:50 (Appellant's position); 24:48-:58 (Secretary's position).

[32] Appellant's Brief (Br.) at 5.

[33] *Id.* at 17.

[34] Secretary's Br. at 11.

[35] *Id*. at 7.

### III. ANALYSIS

We begin our analysis with the most important thing to consider in a case like this—the plain language of subsection 1114(k). And, in that regard, we also underscore a court's appropriate role in matters of statutory interpretation. We will explain why appellant's argument that she is entitled to more than one SMC(k) award, one for each of her two creative organ losses, fails under the plain language that Congress used in subsection 1114(k). Plus, even though it is unnecessary given the plain language of subsection 1114(k), we describe why the legislative history supports our interpretation of the statute. We ultimately conclude that the Board did not clearly err when it denied entitlement to an additional award of SMC(k) for the loss of use of another creative organ (vagina). So, we will affirm the Board's decision.

### A. Subsection 1114(k)

"Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction."[36] "[I]nterpretation of a statute . . . is a question of law,"[37] and "[t]he Court reviews statutory construction questions de novo."[38] It is well-settled that when interpreting a statute, "[w]e look to the plain meaning of the statute, and when we find the plain meaning, our job is simply to apply it."[39] In doing so, "'we look first to [the statutory] language, giving the words used their ordinary meaning.'"[40] But we do not put blinders on because "[c]ontext always matters."[41] If the statutory language is unambiguous and "'the statutory scheme is coherent and consistent,'" then our statutory inquiry ends.[42] In sum, a court's role is not to say what a statute *should say* but rather to give effect to what a statute *actually says*.

Subsection 1114(k) contains two independent clauses, but only the first clause is at issue here.[43] The first clause of subsection 1114(k) provides that:

---

[36] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 374 (2024).

[37] *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003); *see Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018).

[38] *Martinez v. Wilkie*, 31 Vet.App. 170, 175 (2019) (citing 38 U.S.C. § 7261(a)(1)).

[39] *Frantzis v. McDonough*, 35 Vet.App. 354, 360-61 (2022), *aff'd*, 104 F.4th 262 (Fed. Cir. 2024); *see Kisor v. Wilkie*, 588 U.S. 558, 574-75 (2019); *Artis v. District of Columbia*, 583 U.S. 71, 83 (2018); *Frederick v. Shinseki*, 684 F.3d 1263, 1269 (Fed. Cir. 2012).

[40] *Casey v. Wilkie*, 31 Vet.App. 260, 265 (2019).

[41] *Van Dermark v. McDonough*, 57 F.4th 1374, 1381 (Fed. Cir. 2023); *see Casey*, 31 Vet.App. at 265.

[42] *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (internal citation omitted).

[43] *See* R. at 8; Appellant's Br. at 9; Secretary's Br. at 10.

> [I]f the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of *one or more creative organs*, or one foot, or one hand, or both buttocks, or blindness of one eye, having only light perception, has suffered complete organic aphonia with constant inability to communicate by speech, or deafness of both ears, having absence of air and bone conduction, or, in the case of a woman veteran, has suffered the anatomical loss of 25 percent or more of tissue from a single breast or both breasts in combination (including loss by mastectomy or partial mastectomy) or has received radiation treatment of breast tissue, the rate of compensation therefor shall be $96 per month *for each such loss or loss of use* independent of any other compensation provided in subsections (a) through (j) or subsection (s) of this section but in no event to exceed $3,327 per month[.][44]

There are three parts to the first clause of subsection 1114(k): The first part identifies who can obtain entitlement to SMC(k); the second part lists the categories of anatomical areas that are eligible for SMC(k); and the third part contains the operative clause—specifying the action VA must take if the first two parts have been satisfied. There is no dispute concerning the first part of subsection 1114(k)—we know appellant is a veteran who, as the result of a service-connected disability, has lost the use of more than one creative organ.[45] She currently receives SMC(k) for the loss of use of one creative organ (uterus).[46] So, we will focus on the other two parts.

To start, we note that both parties agree that Congress's use of the commas and disjunctive term "or" repeatedly in the second part of subsection 1114(k) signals that there are eight categories of anatomical areas that are subject to an award of compensation.[47] Appellant only seeks entitlement to an additional SMC(k) award under the first of those eight categories—"one or more creative organs."[48] We limit ourselves to interpreting that statutory provision. Neither we nor the Federal Circuit has interpreted this phrase. In situations where a disputed phrase has not yet been

---

[44] 38 U.S.C. § 1114(k) (emphasis added).

[45] Secretary's Br. at 13. In her initial brief, appellant argued that "VA waived its opportunity to contest whether the dyspareunia is capable of resulting in the loss of use of a creative organ" and that "if it is unclear whether [her] disorder qualifies for loss or loss of use of a creative organ," then the Board should address it in the first instance. Appellant's Br. at 7. But the Secretary never argued that appellant's dyspareunia results in the loss of use of a creative organ. Indeed, the Secretary expressly concedes that the Board "clearly assumed" that appellant's "vagina was a creative organ." Secretary's Br. at 13. Therefore, we need not discuss this argument further.

[46] R. at 5, 2158-63 (Nov. 2016 rating decision granting SMC(k) for loss of use of her uterus based on a service-connected condition).

[47] Appellant's Br. at 8; Secretary's Br. at 11; Reply Br. at 2.; *see also Loughrin v. United States*, 573 U.S. 351, 357 (2014) (recognizing the familiar canon of statutory construction in which terms connected by disjunctive "or" are "to be given separate meanings.").

[48] Appellant's Br. at 8-10.

7

defined, we have turned to the dictionary to determine the ordinary meaning of undefined terms.[49] In accord with common sense, and not all that controversial, the meaning of "one or more" means one or a number greater than one.[50] So, we turn next to the third part of subsection 1114(k) to see how VA should award SMC(k) given that appellant has the loss of use of more than one creative organ. To reiterate, the operative part of subsection 1114(k) provides that "the rate of compensation therefor shall be $96 per month *for each such loss or loss of use.*"[51] But merely reciting this phrase does not tell us what "for each such loss or loss of use" means. To determine the meaning of this phrase, we must examine the context and structure of the statute, a matter we turn to next.

B. What does "for each such loss or loss of use" in subsection 1114(k) mean?

The parties' positions about the meaning of the phrase "for each such loss or loss of use" frame the issue. Appellant takes the position that the phrase means that VA is to award SMC(k) for each anatomical *loss* mentioned in subsection 1114(k) without regard to the categories of anatomical loss that Congress provided.[52] In contrast, the Secretary asserts that the phrase, particularly emphasizing the word "each," refers to each of the eight categories of anatomical loss or loss of use—meaning that more than one award of SMC(k) may be warranted if more than one category is met but not if a single category is met more than once.[53]

Let's use a simple analogy to visualize what separates the parties' positions. Assume there are eight baskets on a table. Those baskets are akin to the eight categories of anatomical loss or loss of use that Congress set out in subsection 1114(k). In each of our metaphorical baskets, there are several items. If one were asked to take some action with respect to "each" thing on the table, what would that mean? The Secretary's view would be that the "each" referred to the baskets— what are the eight anatomical areas that Congress listed in subsection 1114(k). In contrast, appellant's view in our table example would say that "each" refers to all the items in the various baskets. We conclude that the plain language, context, and structure of subsection 1114(k) favor the Secretary's reading of that statutory provision.

---

[49] *See Watkins v. McDonough*, 35 Vet.App. 256, 264 (2022); *see also Perrin v. United States*, 444 U.S. 37, 42 (1979).

[50] "One" means "a single person or thing." MERRIAM WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/one (last visited Jan. 15, 2026). And "more" means "a greater quantity, number, or amount." *Id.* at https://www.merriam-webster.com/dictionary/more (last visited Jan. 15, 2026).

[51] 38 U.S.C. § 1114(k) (emphasis added).

[52] Appellant's Br. at 10-13.

[53] Secretary's Br. at 10-11.

8

Looking at the structure of subsection 1114(k) as a whole, it is grammatically correct to read the word "each" as referring to the eight categories of anatomical loss or loss of use listed in the preceding part of the provision.[54] Congress clearly defined the context by specifying that "each" refers to "such loss or loss of use."[55] And this reading aligns with the fact that Congress approached each single category of loss or loss of use individually, crafting limitations in some but not others. For example, some categories require the loss of "one hand" or "one foot," whereas some categories require the loss of "both buttocks" or a specific percentage of loss of a body part.[56] In those instances, the statute instructs us that if there is a situation in which a veteran has multiple losses in the hand and foot categories, another subsection should be used to rate more than one hand or foot disability.[57] That is not the case in the creative organ category—it contains no limiting language. Rather, Congress accounted for the singular and plural forms of a loss within the single creative organ category and we are not directed to look elsewhere.[58]

This is not to say that sometimes it may also be grammatically correct to read "each" as referring to something more along the lines that appellant suggests. So, if it is grammatically possible to accept both parties' positions, what are we to do? Basically, Congress provided the answer for us. That is so because, if we accepted appellant's reading, the words "or more" in the creative organ category would be rendered meaningless because they would serve no purpose. Let's consider a series of examples to understand why that is so. Assume Veteran A has the loss of use of creative organ #1. There is no question that an award of SMC(k) is appropriate here. As we stated above, "one or more" means one and it also means more than one. Now assume Veteran B has the loss of use of creative organ #1 and creative organ #2. Under appellant's point of view, Veteran B would be entitled to two awards under subsection 1114(k). Tellingly, however, that conclusion is correct whether the statute reads as it does ("one or more") or if one changed it to say "one creative organ" or "a creative organ." The words "or more" would never have any purpose

---

[54] *See* GRAMMARFOREXPERTS ONLINE, http://grammarforexperts.com/every-vs-all-vs-each/ (last visited Jan. 15, 2026) (explaining that "each" implies that all members of a group are considered one by one or individually); *see also Barry v. McDonough*, 101 F.4th 1348, 1357 (Fed. Cir. 2024).

[55] 38 U.S.C. § 1114(k).

[56] *See id.*

[57] *See* 38 U.S.C. § 1114(1), (m).

[58] VA's implementing regulation conforms to this view. *See* 38 C.F.R. § 3.350(a)(1)(i) (2025) (providing that "[l]oss of a creative organ will be shown by acquired absence of one or both testicles . . . or ovaries or other creative organ.").

9

under appellant's reading. In contrast, the words "or more" do work under the Secretary's point of view. In Veteran B's example, the fact that two creative organs are in play makes the "or more" phrase meaningful. It says you don't count twice. Congress deliberatively chose to use the phrase "one or more" in the creative organ category under subsection 1114(k), and we must give it effect.[59] It is a well-established canon of statutory interpretation that we give effect to all terms and avoid rendering parts of the statute's text "'inoperative or superfluous, void or insignificant.'"[60] In other words, our job as judges is to give effect to every word that Congress employed. Appellant's point of view does not allow us to do so, while the Secretary's interpretation does. This observation effectively answers the question before us.

Although it is not necessary to go beyond the plain language Congress used in subsection 1114(k) to reach our holding, the legislative history of this provision supports our conclusion. Congress modified the SMC(k) statutory language as part of the Veterans' Pension and Readjustment Assistance Act of 1967.[61] The Public Law provided that the intent of the modification was to "increase the rates of pension payable to certain veterans and their widows to provide additional readjustment assistance for veterans of service after January 31, 1955, and for other purposes."[62] Overall, and as the Board explained, Congress wanted to allow for multiple SMC(k) awards, which was not possible before 1967.[63] For example, the amended language would allow two SMC(k) awards if a veteran had loss of one foot and loss of use of one or more creative organs (two body area losses). In other words, a veteran could obtain an SMC(k) award for each

---

[59] Pub. L. No. 90-77, 81 Stat. 190 (Aug. 31, 1967).

[60] *See Martinez,* 31 Vet.App. at 176 (explaining that a court must presume that each word used by Congress in a statute is there for a reason and give effect to every word if possible); *see also Marx v. Gen. Revenue Corp*., 568 U.S. 371, 386 (2013) (stating that the "canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme"); *Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004) (directing that reviewing courts "must give effect to every word of a statute wherever possible"); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))).

[61] Pub. L. No. 90-77, 81 Stat. 190 (Aug. 31, 1967).

[62] *Id.*

[63] R. at 11-12; Pub. L. No.  90-77, 81 Stat. 178 (Aug. 31, 1967), 113 Cong. Rec. 23790 ("The conferees agreed to . . . allow[] a statutory award . . . for each anatomical loss they suffer. . . . Under present law only a single . . . award is payable, regardless of how many anatomical losses are sustained."), 23145 ("The language of existing law . . . does not permit the payment of a higher statutory award for certain combinations of disability, such as the anatomical loss of an eye and one extremity, though each alone would entitle the veteran to a statutory award . . . The bill before us contains provisions that assure a statutory award . . . for each such loss.") (Aug. 23, 1967).

category of loss. This amended language did not change the fact that loss of use of one creative organ or loss of use of more than one creative organ satisfies the creative organ category as a single anatomical loss for SMC(k) purposes. Indeed, in a 1967 congressional record, the Chairman of the House Committee on Veterans Affairs explained that without the amendment, "a veteran with the loss of an eye and a hand may . . . receive only one [SMC(k) award]" but enactment of the amended bill "will authorize in such a case" two SMC(k) awards.[64] The Chairman also recognized that the amended bill contained limitations such as placing a cap on the total amount that VA can award under SMC(k), and "the loss of more than one creative organ would, for this purpose, be considered a single 'loss.'"[65] Of course, such a statement could not alter the meaning of subsection 1114(k) if appellant's view of that provision was correct. But the statement is helpful as confirmation of the conclusion we have reached about the correct meaning of this statutory provision based on the plain language that Congress used.

We make one final point: It may be that the better policy would be to adopt appellant's position. After all, the loss of a creative organ (or its use) can lead to different problems. For example, a particular organ might affect the ability to reproduce while another issue might affect the ability to engage in sexual intercourse without pain. And we might have adopted appellant's view if we served in Congress. But we don't. As we have said, our job as judges is to give effect to what Congress has done.

### C. Summary

After reviewing the plain language, context, and structure of subsection 1114(k), the Board found that "the writing of this statute is not unclear or ambiguous, and does plainly set forth its intent that for each of these separate types of disabilities in the list, one award of SMC(k) can be assigned."[66] As we described above, the Board's interpretation of subsection 1114(k) is correct and is consistent with our decision here today. Congress has provided that a veteran such as appellant here with a loss of use of two creative organs is entitled to only a single award of SMC(k) because the statute bases entitlement on the loss or loss of use of "one or more" such organs. Therefore, we conclude that the Board did not clearly err when it found that appellant was not entitled to more

---

[64] *See* 113 Cong. Rec. 6860 (Mar. 15, 1967) (statement of rep. Olin E. Teague); *see also* 113 Cong. Rec. 7236 (Mar. 20, 1967).

[65] *Id.*

[66] R. at 8-9.

11

than one SMC(k) award for the loss of use of more than one creative organ.[67] We, therefore, affirm the Board's decision.

## IV. CONCLUSION

After consideration of the parties' briefs, oral argument, the governing law, and the record, the Court AFFIRMS the August 1, 2023, Board decision.

JAQUITH, *Judge*, dissenting. Subsection 1114(k) unambiguously provides that a veteran who, "as the result of service-connected disability, has suffered the anatomical loss or loss of use of one or more creative organs, . . . shall be [compensated] $96 per month for each such loss or loss of use."[68] It is undisputed that Sharon Westphal has suffered the service-connected anatomical loss of her uterus and service-connected debilitating dyspareunia and vaginal fissures that have impaired the use of her vagina.[69] In this circumstance, the statute required the Board to determine whether Ms. Westphal's dyspareunia and vaginal fissures resulted in the loss of use of her vagina because, if so, subsection 1114(k) plainly provides for Ms. Westphal to receive $96 per month for each loss—the anatomical loss of her uterus and the loss of use of her vagina—totaling $192 per month. So I respectfully dissent from the majority's approval of VA's circumvention of the statutory mandate.

To put the worst first, the Board said of the veteran's accurate recitation of the operative statutory language: "[T]he [veteran's] April 2023 brief presents an inaccurate depiction of the statute in question. Through the selectively convenient use of ellipses, it alters the structure of the sentence and its meaning entirely."[70] And the Board called the veteran's argument of that statutory language "disingenuous,"[71] offering nothing but its own contradictory conclusion to back its accusation.[72] The Board does not explain how or why the statute's listing of a series of anatomical

---

[67] The Board's determination whether a veteran is entitled to SMC is a factual finding that this Court reviews for clear error. *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013).

[68] 38 U.S.C. § 1114(k).

[69] R. at 50.

[70] R. at 7.

[71] R. at 9.

[72] The baselessness of the Board's hostility is highlighted by *the parties'* joint motion for partial remand, which emphasized by underlining, in subsection 1114(k), "the anatomical loss or loss of use of one or more creative organs," and "for each such loss or loss of use," as framing the issue necessitating remand for the Board to "address whether

losses or losses of use alters the operative language for each one—compensation of $96 per month. Although the majority does not explicitly embrace the Board's unseemly, unwarranted, and unsupported accusation, it reaches the same result.

<u>The Statute Provides SMC(k) for Each Loss of One or More Creative Organs</u>

Getting there depends on both the Board and the majority adding a limitation to the statute. The Board construes subsection 1114(k) as providing one award of compensation for each separate type of disability, affecting different parts of the body.[73] The majority calls eight anatomical areas and losses "categories" and analogizes them to "baskets" such that veterans can only be compensated for one loss per category.[74] The problem is that the statute does not say that. The determinative language for the backside of every comma in the statute's description of disabilities is "for each such loss or loss of use."[75] Congress could have said "for each separate type of disability affecting a different body part" as the Board envisioned,[76] or "for each category of anatomical loss," as the majority does.[77] But Congress did not do so. As the majority acknowledges, the reference to creative organs in subsection 1114(k) "contains no limiting language."[78] Yet the majority's categorization construct and basketweaving adds a limitation that restricts a veteran to $96 per month as compensation for the loss or loss of use of creative organs, however many losses the veteran must endure. That should not stand, because "the Court will not insert limiting language that is not present in the statute."[79]

Moreover, "the first criterion in the statutory interpretation hierarchy [is] a natural reading of the full text."[80] In determining whether the natural reading of the statutory language reveals its

---

loss of use of more than one creative organ warrants a single rate of $96 or a rate of $96 for 'each such loss or loss of use.'" R. at 51.

[73] R. at 8-9.

[74] *Ante* at 7-9.

[75] 38 U.S.C. § 1114(k).

[76] R. at 8-9.

[77] *Ante* at 8-9.

[78] *Ante* at 9.

[79] *Buffington v. Wilkie*, 31 Vet.App. 293, 301 (2019), *aff'd sub nom. Buffington v. McDonough*, 7 F.4th 1361 (Fed. Cir. 2021).

[80] *United States v. Wells*, 519 U.S. 482, 483, 490 (1997).

plain meaning "we look to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'"[81] The majority endorses these principles[82] but misreads their impact in this case.

The natural reading of subsection 1114(k) provides that a veteran who, "as the result of service-connected disability, has suffered the anatomical loss or loss of use of one or more creative organs, . . . shall be [compensated] $96 per month for each such loss or loss of use." The applicable regulation states it as plainly as the statute: "Special monthly compensation under [subsection] 1114(k) is payable for each anatomical loss or loss of use of . . . one or more creative organs."[83] By statute and regulation, the measure of SMC(k) is each loss, one by one, individually.[84]

The majority acknowledges that the veteran could be right, except that "the words 'or more' in the creative organ category would be rendered meaningless."[85] But the context makes clear that giving effect to the words "or more" means that veterans are entitled to $96 per month for each loss or loss of use of a creative organ.[86] That distinguishes creative organs from feet, hands, and eyes. The natural reading of the statute yields this result: for each loss or loss of use of one or more creative organs, $96 per month, per subsection 1114(k); for the loss or loss of use of one foot, $96 per month, per subsection 1114(k), but for the loss or loss of use of both feet, $3,327 per month, per subsection 1114(*l*); for the loss or loss of use of one hand, $96 per month, per subsection 1114(k), but for the loss or loss of use of both hands, $3,671 per month, per subsection 1114(m); for blindness of one eye, having only light perception, $96 per month, per subsection 1114(k), but for blindness in both eyes, with 5/200 visual acuity or less, $3,327 per month, per subsection 1114(*l*), and for blindness of both eyes, having only light perception, $3,671 per month, per subsection 1114(m).

The Court has walked this ground before. In *Barry v. McDonough*, the majority likewise read a limitation into section 1114 and into 38 C.F.R. § 3.350 that wasn't there.[87] The Federal

---

[81] *Terry v. McDonough*, 37 Vet.App. 1, 8 (2023) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997)).

[82] *See ante* at 6.

[83] 38 C.F.R. § 3.350(a) (2025).

[84] *See ante* at 9, n.54.

[85] *See ante* at 9-10.

[86] *See* 38 U.S.C. § 1114(k); *Martinez v. Wilkie*, 31 Vet.App. 170, 176 (2019); *ante* at 10 n.60.

[87] *See Barry v McDonough*, 35 Vet.App. 111, 128-29 (2022) (Jaquith, J., dissenting), *reversed and remanded*, 101 F.4th 1348 (Fed. Cir. 2024).

Circuit reversed because the statute and regulation have "(1) eligibility requirements to show entitlement to SMC or SMC increases; (2) mandatory SMC awards or increases; and (3) an SMC cap," but no additional limitations, so they permit more than one increase.[88] Regarding subsection 1114(k), the Federal Circuit noted that it "enumerates several different disabling conditions that give a relatively minor SMC increase," so "its operation could be undermined without specifying that *each* condition independently confers an increase in SMC."[89] Denying Ms. Westphal the small increase that subsection 1114(k) provides for her second seriously disabling condition violates the statute and also contravenes the "mandate that separate disabilities are to be rated separately."[90] Effectuating the statutory language to provide $96 per month for each creative organ loss (for a total of $192 per month) fulfills the statute's prescription "that more severe disabilities are compensated at a higher level of SMC."[91]

Had Congress truly wanted to foreclose SMC for the loss of more than one creative organ, "it would have done so more explicitly."[92] Congress did nothing of the sort. Until 1967, the predecessor to subsection 1114(k) provided as follows:

> if the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of a creative organ, or one foot, or one hand, or both buttocks, or blindness of one eye, having only light perception, the rate of compensation therefor shall be $47 per month[.][93]

In 1967, section 314(k) was amended to add the language that is operative in this case, providing:

> if the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of **one or more creative organs**, or one foot, or one hand, or both buttocks, or blindness of one eye, having only light perception, or has suffered complete organic aphonia with constant inability to communicate by speech, or deafness of both ears, having absence of air and bone conduction, the rate of compensation therefor shall be $47 per month **for each such loss or loss of use**[.][94]

---

[88] *Barry v. McDonough*, 101 F.4th 1348, 1355 (Fed. Cir. 2024).

[89] *Id.* at 1357.

[90] *Banschbach v. McDonough*, 37 Vet.App. 422, 428 (2024).

[91] *Bria v. Wilkie*, 33 Vet.App. 228, 235 (2021).

[92] *Loomis v. Collins*, 38 Vet.App. 319, 328 (2025).

[93] 38 U.S.C. § 314(k) (1958).

[94] 38 U.S.C. § 314(k) (1967); *see* Pub. L. No. 90-77, 81 Stat. 190 (Aug. 31, 1967) (emphasis added).

15

The Conference Agreement (on August 14, 1967) noted that existing law authorized only one allowance under section 314(k), but the amended version "would authorize the payment of the additional allowance for *each* such loss.[95] Neither the Conference Agreement nor the amended statute (passed on August 31, 1967) contains any limiting language for monthly compensation for each loss or loss of use of one or more creative organs. The majority relies on a single sentence in the explanation of the House bill by Rep. Teague of Texas five months before the Conference Agreement and subsequent enactment: "Under the amended bill, however, the total payment in any case may not exceed $400 and the loss of more than one creative organ would, for this purpose, be considered a single 'loss.'"[96] Rep. Teague's statement is not a model of clarity, suggesting that considering more than one loss of a creative organ to be a single loss (itself a fallacy) would be for the purpose of the total loss in any case not exceeding $400 (rather than for foreclosing a veteran's recovery for two separate creative organ losses). And his statement was not carried over in the Conference Agreement or, most importantly, in the actual enactment. "Because we are a government of laws, not of men, and are governed by what Congress enacted rather than by what it intended, the sole object of the interpretative enterprise is to determine what a law *says*."[97] As the Supreme Court recently reemphasized, the certainty of what Congress actually enacted matters far more than what it may have expected or intended.[98] The solitary sentence the majority highlights is scant legislative history that "does not move the needle."[99]

"The only reliable indication of [congressional] intent—the only thing we know for sure can be attributed to all of them—is the words of the bill that they voted to make law."[100] And "it is only the words of the bill that have presidential approval," so when it comes to the Court, "'[w]e do not inquire what the legislature meant; we ask only what the statute means.'"[101] Here, the operative words were added together in 1967: Under the amended statute, the loss or loss of use

---

[95] H.R. Rep. No. 90-554, at 32 (Aug. 14, 1967).

[96] H.R. Rep. No. 90-130, at 17 (Mar. 15, 1967); *see ante* at 11 n.64.

[97] *Lawson v. FMR LLC*, 571 U.S. 429, 459–60 (2014); *see Crews v. McDonough*, 36 Vet. App. 67, 95 (2023) (Falvey, J., dissenting).

[98] *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 381 (2025); *Stanley v. City of Sanford, Fla.*, 606 U.S. 46, 58 (2025).

[99] *Medina*, 606 U.S. at 381.

[100] *Crosby v. Natl. For. Trade Council*, 530 U.S. 363, 390–91 (2000) (Scalia, J., concurring).

[101] *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 397 (1951) (Jackson, J., concurring) (quoting Oliver Wendell Holmes, COLLECTED LEGAL PAPERS, 207 (1920)).

16

of "one or more creative organs" results in compensation "for each such loss or loss of use." Because Congress did not explicitly limit a veteran's entitlement under subsection 1114(k) to SMC for only one of a veteran's service-connected losses or losses of use of a creative organ, the Court must presume that it did not intend such a limitation.[102]

The Board offers only two contentions to support its strained construction of the statute to say that each loss doesn't apply to each loss of a creative organ, but neither contention bears the strain. First, the Board points to § 3.350(a)(1) as "clearly indicat[ing] that each individual creative organ is not eligible for SMC(k), as there is 'loss of a creative organ' when there is loss of one testicle or one ovary, as well as when there is loss of two testicles or two ovaries."[103] However, the regulation provides no such clear indication—and if it did, it would be trumped by the statute.[104] Instead, the regulation clearly states that the statute provides for SMC for "each anatomical loss or loss of use of . . . one or more creative organs."[105] The language in § 3.350(a)(1) the Board relied on obviously refers to creative organs that come in pairs, specifying testicles and ovaries.[106] The complete sentence is: "Loss of a creative organ will be shown by acquired absence of one or both testicles (other than undescended testicles) or ovaries or other creative organ."[107] In context, "one or both" applies to "testicles . . . or ovaries" but not to creative organs that do not come in pairs. It would be nonsensical for "one or both" to refer to creative organs that are singular, such as the uterus and vagina at issue here. For such singular organs, the sentence plainly means only that loss of a creative organ will be shown by the acquired absence of that creative organ.[108] If § 3.350(a)(1)

---

[102] *Payne v. Wilkie*, 31 Vet.App. 373, 384 (2019).

[103] R. at 9.

[104] *See Fairfield S. Co. v. Dir., Off. of Workers' Comp. Program*, 161 F.4th 791, 801 (11th Cir. 2025) ("[W]here an interpretation of a regulation conflicts with a statute, the statute controls."); *see also Brown v. Gardner*, 513 U.S. 115, 121-22 (1994) (holding that administrative regulations that are inconsistent with statute do not control, even when Congress has reenacted the statute amidst decades of contrary VA practice); *Swain v. McDonald*, 27 Vet.App. 219, 224 (2015) ("It is axiomatic that a regulation may not trump the plain language of a statute.").

[105] 38 C.F.R. § 3.350(a).

[106] 38 C.F.R. § 3.350(a)(1)(i).

[107] *Id.*

[108] Although "acquired absence" is not defined in VA's regulation, in general, it means that an organ was lost or removed due to disease, trauma, or surgery, rather than congenitally absent. *See Tabular List of Diseases and Injuries*, International Classification of Diseases, 10th Rev., Clinical Modification (ICD-10-CM), U.S. CTRS. FOR DISEASE CONTROL & PREVENTION ("Acquired absence of organs . . . [i]ncludes: postprocedural or post-traumatic loss of body part" but "[e]xcludes1: congenital absence."), https://ftp.cdc.gov/pub/health_statistics/nchs/publications/ICD10CM/2022/icd10cm-tabular-2022-April-1.pdf (last visited Jan. 4, 2026); *Acquired*, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 18 (33d ed. 2020) ("not genetic, but produced by influences originating outside the

has any relevance to this case, it favors the veteran based on the negative implication canon: "[t]he expression of one thing implies the exclusion of others,"[109] so paired testicles and ovaries are covered but singular creative organs are not—they are excluded from any operative effect of "both."

A year after the statute was amended to state that the loss or loss of use of "one or more creative organs" results in compensation "for each such loss or loss of use," § 3.350(a) was changed to likewise state that "[s]pecial monthly compensation . . . is payable for each anatomical loss or loss of use of . . . one or more creative organs."[110] It is telling that over 57 years have passed since the regulatory changes adding "for each anatomical loss or loss of use of . . . one or more creative organs," and VA apparently has not advanced any authoritative statement or official agency position that supports the interpretation by the Board that the majority embraces—changing each loss to each category of loss.[111] At oral argument, the Secretary acknowledged that the Board's interpretation is not even set forth in the *VA Adjudication Procedures Manual* (*M21-1*),[112] and that the Secretary's argument is based on what Congress did when it changed the SMC statute in 1967.[113] When VA wants to limit SMC, VA knows how to say so specifically, as it did with respect to extremities.[114] But there's nothing like that for creative organs. Unfortunately for veterans, the

---

organism.").

[109] Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012).

[110] Special Monthly Compensation Ratings, 33 Fed. Reg. 16273 (Nov. 6, 1968).

[111] *See Kisor v. Wilkie*, 588 U.S. 558, 577 (2019) (When deference to an agency's regulatory interpretation of statutes was encouraged, such deference was limited to "the agency's 'authoritative' or 'official position.'"). The Supreme Court subsequently made clear that "courts must exercise independent judgment in determining the meaning of statutory provisions," including the statute's single, best reading. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024).

[112] *See*, *e.g.*, *M21-1*, pt. VIII, subpt. iv, ch. 4, § A.4.d. ("The issue of entitlement to SMC for L/LOU[loss of use] of a creative organ may be • based on a specific claim, or • raised within the scope of another claimed issue when entitlement is shown in the evidence of record," and "[e]ntitlement to SMC (k) for one or more creative organs • may be based on a multi-link causal chain between an SC disability and the LOU or anatomical loss, and • is not limited to certain disabilities."); pt. V, subpt. iii, ch. 8, § A.1.e. ("SMC (k) for loss of use (LOU) of a creative organ will be inferred and awarded whenever SC for [female sexual arousal disorder (FSAD)] is granted."); and pt. V, subpt. iii., ch. 8, § A.2.h. ("SMC due to anatomical loss or loss of use of a creative organ is warranted when an SC condition results in infertility.").

[113] OA at 29:15 – 31:23; *see ante* at 2 n.9.

[114] *See M21-1*, pt. VIII, subpt. iv, ch.4, § A.2.e.:

Do not assign SMC for • loss or loss of use (L/LOU) of a leg *and* L/LOU of the foot of the same leg, or • L/LOU of an arm and L/LOU of the hand of the same arm. If a [v]eteran has L/LOU of a leg, the L/LOU of the foot of the same leg is subsumed in the level of SMC assigned to the leg. Similarly, if a [v]eteran has L/LOU of an arm, the L/LOU of the hand of the same arm is subsumed in the level of SMC assigned to the arm.

categorical basket limitation the Board and the majority add to subsection 1114(k) and § 3.350(a) cabins the veteran's compensation but not her disabilities, and those are separate and serious.

The Board's second contention is a red herring. The Board suggests that the veteran's argument that her anatomical loss of her uterus and loss of use of her vagina—two creative organs—is comparable to entitling a male veteran to two SMC(k) awards for erectile dysfunction, one for the inability to procreate and one for the psychological impact.[115] There are medical issues implicated in the Board's set-up that it does not attempt to unravel—and would not be competent to decide.[116] And the Board blurs the statutory mandate—SMC is based on the anatomical loss or loss of use of a creative organ, meaning that "the ability of the creative organ to function must be diminished,"[117] whether the diminished functioning arises from physical or mental impairment (such as loss of libido),[118] and whether the diminished functioning is procreative or sexual.[119] The Board's pretense ignores VA's acknowledgement that, for all veterans, SMC(k) is warranted when the evidence shows that service-connected sexual dysfunction results in loss of use of a creative organ and when there is a service-connected condition resulting in infertility.[120] More basically,

---

*See generally* 38 C.F.R. § 4.26(a) (2025) ("The use of the terms 'arms' and 'legs' is not intended to distinguish between the arm, forearm and hand, or the thigh, leg, and foot, but relates to the upper extremities and lower extremities as a whole.").

[115] R. at 10.

[116] *See McLendon v. Nicholson*, 20 Vet.App. 79, 85 (2006) ("[T]he Board is not competent to render [medical assessments] in the first instance."); *Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991) ("[The Board] may consider only independent medical evidence to support [its] findings."), *overruled on other grounds by Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998).

[117] *Bria*, 33 Vet.App. at 234.

[118] *Id.* at 236.

[119] *See Summary of Legal Interpretation of the General Counsel—Precedent Opinion 5-89, Entitlement to Special Monthly Compensation for Anatomical Loss of a Creative Organ Following Elective Sterilization*, 54 Fed. Reg. 38033-02, 1989 WL 295289 (Sept. 14, 1989) ("[T]he fact that a veteran has undergone elective, noncompensable sterilization does not bar entitlement to special monthly compensation for subsequent service-connected anatomical loss of a creative organ."); *Summary of Legal Interpretation of the General Counsel-Precedent Opinion 93-90, Entitlement to Special Monthly Compensation for Anatomical Loss of a Creative Organ*, 56 Fed. Reg. 1220-01, 1991 WL 370040 (Jan. 11, 1991) ("[A] veteran who suffers a service-connected anatomical loss of a creative organ is entitled to SMC, regardless of whether the veteran suffered prior nonservice-connected loss of use of that creative organ.").

[120] *See* M21-1, pt. V, subpt. iii, ch. 8. § A.1.e. ("Entitlement to special monthly compensation (SMC) must be considered in [female sexual arousal disorder (FSAD)] cases. SMC (k) for loss of use (LOU) of a creative organ will be inferred and awarded whenever [service connection (SC)] for FSAD is granted."); pt. V, subpt. iii, ch. 7. § 4.b. ("Grant SMC (k) when the evidence shows that SC [erectile dysfunction (ED)] constitutes LOU of a creative organ. Other diagnoses of sexual dysfunction that may result in LOU include (but are not limited to) loss of libido, loss of sexual drive, or impotence."); pt. V, subpt. iii, ch. 7, § 5.d., and pt. V, subpt. iii, ch. 8, § A.2.h. ("SMC due to anatomical loss or LOU of a creative organ is warranted if there is an SC condition resulting in infertility."). *See also Claims Based on Chronic Effects of Exposure to Vesicant Agents*, 59 Fed. Reg. 3532-01, 1994 WL 16851 (Jan. 24, 1994)

the Board equates the veteran's functional loss of two creative organs—her anatomical loss of her uterus and her loss of use of her vagina—to the loss or loss of use of the single creative organ of the Board's straw man. The Board's erectile dysfunction analogy is not at all analogous because the veteran has suffered the functional loss of two creative organs, not just one.

### The Veteran's Separate Vagina Disability Merits SMC(k) Consideration

In addition to her anatomical loss of a creative organ—her uterus, along with her ovaries and fallopian tubes via a service-connected total abdominal hysterectomy in 1997—the veteran has, for decades, suffered from vaginal fissures and dyspareunia, disabilities that the hysterectomy did not address. The veteran is entitled to adjudication of her application for SMC(k) for the loss of use of her vagina on the merits in accordance with the basic principle that "separate disabilities are to be rated separately."[121] As the record makes clear, the veteran's anatomical loss of her uterus through a hysterectomy and her dyspareunia related to vaginal fissures are distinct disabilities with different origins. The veteran's hysterectomy was a result of endometriosis,[122] a disease,[123] but her dyspareunia due to vaginal fissures[124] was "established as directly related to military service" as a consequence of treatment she received, such as a perineorrhaphy or a perineoplasty.[125] Or her vaginal fissures and dyspareunia resulted from an injury.

The history of the veteran's claimed loss of use of her vagina due to dyspareunia from vaginal fissures dates to November 1980, when she was a victim of military sexual trauma (MST), enduring "severe, excruciating pain" and physical injury.[126] In May 1981, she was treated for

---

("Sexual dysfunction is not compensated under VA's Schedule for Rating Disabilities (38 C.F.R. Part 4) but rather under [subsection] 1114(k), which provides special monthly compensation for the loss or loss of use of a creative organ.").

[121] *Banschbach*, 37 Vet. App. at 428.

[122] *See, e.g.,* R. at 292, 373, 375, 2338.

[123] *Endometriosis*, U.S. Dep't of Health & Hum. Servs., NIH, https://www.nichd.nih.gov/health/topics/factsheets/endometriosis (last visited Jan. 21, 2026) ("Endometriosis is a disease in which tissue similar to the lining of the uterus grows in other places in the body.").

[124] A fissure is "[a] deep furrow, cleft, or slit." *Fissure*, STEDMAN'S MEDICAL DICTIONARY 733 (28th ed. 2006).

[125] R. at 1778, 1842, 1867, 1910.

[126] R. at 1992. The regional office (RO) said there was no evidence to confirm the veteran's claim of MST. R. at 2137, 2160. But MST, as well as PTSD are noted in her medical history, R. at 640, 2021, 2024, and in a VA doctor's "medical diagnosis impacting care." R. at 640. That doctor wrote that the veteran's "[d]ysparuenia started after sexual trauma she experienced in the past." R. at 642. Another VA doctor noted that the veteran had been the victim of a sexual assault and said that she "finally found the courage to file a claim and [VA] denied it," and that she was physically injured and had surgery. R. at 2021. And the veteran's counsel has argued to the Board that "[t]he effective date for

20

abdominal pain. [127] In October 1982, she acknowledged having been treated for a "female disorder."[128] In June 1983, she was diagnosed, based on laparoscopy, with endometriosis causing chronic pelvic pain.[129] In October 1983, she was diagnosed with vaginal fissure and dyspareunia and underwent perineoplasty to correct her vaginal fissure.[130] Within a few weeks of her August 1984 honorable discharge from active duty, the veteran submitted a claim for endometriosis and vaginal fissures.[131] A January 1985 VA exam noted the veteran's history of endometriosis and diagnosed endometriosis but found nothing current and denied her claim.[132]

On August 21, 1997, the veteran's history of severe disabling dysmenorrhea, abdominal pain, infertility, and endometriosis resulted in a total abdominal hysterectomy and a bilateral salpingo-oophorectomy—the removal of her uterus, cervix, ovaries, and fallopian tubes.[133]

In June 2016, the veteran submitted a claim for endometriosis, a hysterectomy secondary to endometriosis, and a fissure secondary to MST.[134] In October 2016, a VA examiner noted that the veteran "developed a chronic problem regarding abdominal pain and hemorrhaging overtime during service," with issues beginning as early as May 1981.[135] The examiner opined that the veteran's total abdominal hysterectomy was likely proximately due to the service-connected endometriosis [136] and the RO granted service connection for the veteran's total abdominal hysterectomy and bilateral salpingo-oophorectomy, as well as entitlement to SMC(k) based on the anatomical loss of a creative organ, both effective the date of the veteran's June 2016 claim.[137]

---

[the veteran's] dyspareunia should be back to the original claim filed in 8/23/84 for the sexual assault because it is intertwined with the sexual assault and the RO at the time deferred rating PTSD from military sexual trauma." R. at 316, 1735.

[127] R. at 2337-38.

[128] R. at 2337.

[129] R. at 2337, 3020, 3265.

[130] R. at 2119-20, 3265.

[131] R. at 3270.

[132] R. at 3237-40.

[133] R. at 3144-50.

[134] R. at 3166.

[135] R. at 2338.

[136] *Id.*

[137] R. at 2159.

In June 2017, the veteran filed a claim for her vaginal fissures.[138] In August 2017, VA found that "[s]ervice connection for dyspareunia due to vaginal fissure has been established as directly related to military service" but assigned a noncompensable rating.[139] In January 2020, the Board granted a 30% rating for the veteran's vaginal condition, to include dyspareunia and vaginal fissure, manifested with symptoms not controlled by continuous treatment.[140] The Secretary conceded error, and the Court remanded the case.[141] At additional examinations, the veteran described her constant pain.[142] She said that "it is difficult to have a relationship," when she was married "it was painful to have sex," and she continued to experience serious physical problems for which she did not "get any kind of relief."[143]

### The Board Decision Should Be Vacated and the Question of SMC(k) for the Veteran's Loss of Use of Her Vagina Should Be Remanded

As the Secretary asserts, the Board acknowledges that the vagina is a creative organ.[144] And the Board, in October 2022, acknowledged that the veteran's vaginal condition, to include dyspareunia and vaginal fissure, constitutes a separately compensable disability "with the symptoms not controlled by continuous treatment."[145] But the October 2022 Board did not otherwise address whether the veteran had lost the use of her vagina, denying her claim for SMC(k) "as a matter of law" and declaring that, therefore, "any factual questions pertaining to the Veteran's alleged loss of use of the vagina are rendered moot."[146] And the August 2023 Board chose criticism over substantive consideration. In light of the evidence about the nature, extent, and duration of the veteran's vaginal condition and the actual terms of subsection 1114(k) and § 3.350(a), the

---

[138] R. at 2114-17.

[139] R. at 1842.

[140] R. at 1630-31.

[141] R. at 1133-34.

[142] R. at 374, 415.

[143] R. at 740.

[144] Secretary's Br. at 13; *see*, *e.g.*, R. at 6 (using "creative organ (vagina)"), 8 (explicitly noting that the vagina is a creative organ).

[145] R. at 287, 292-93.

[146] R. at 295.

August 2023 Board decision should be vacated and the matter remanded for a determination whether the veteran has suffered loss of the use of her vagina.

Conclusion

The Board is right when it says that it "is not the case" that "each such loss" in subsection 1114(k) refers only to "one or more creative organs." [147] But the simple, inescapable, and determinative fact is that "each such loss" plainly does refer to "one or more creative organs," which are listed first in the statute.[148] And "$96 per month for each such loss or loss of use" is the only measure set forth. As the Conference Agreement explained, under the pre-1967 law, when the statute said "a creative organ," only one SMC(k) allowance could be paid. But the amended law—changing it to "one or more creative organs"—"authorize[d] the payment of the additional allowance for *each* such loss."[149] That is a persuasive pairing that cannot be overcome by the majority's embrace of the Board's choice to limit compensation to once per category.[150] If the imaginative category baskets give rise to a glimmer of interpretive doubt, here, as in *Barry*, the construction of subsection 1114(k) and § 3.350 argued by VA and adopted by the majority also conflicts with the longstanding pro-veteran canon—"'that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor'"[151] because the most telling indicators of congressional intent are the pro-veteran characteristics of the review scheme that Congress created for the adjudication of veterans' benefits claims.[152]

In my view, the Court should not rubberstamp the Board's deeply flawed anti-veteran interpretation of subsection 1114(k) to deny Ms. Westphal compensation for the service-connected loss of the use of her vagina.[153] I respectfully dissent.

---

[147] R. at 9.

[148] 38 U.S.C. § 1114(k).

[149] H.R. Rep. No. 90-554, at 32.

[150] VA has lumped "female disorders" on forms, *see* R. at 2337, but (since 1967) the statute, regulation, and *M21-1* have not been so indiscriminate or dismissive, making clear that the anatomical loss of the uterus essential for procreation and the loss of use of the vagina for sexual intercourse merit SMC(k) at the specified rate, *for each such loss*—until now.

[151] *Barry*, 35 Vet.App. at 130 (Jaquith, J., dissenting in part) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 441 (2011)).

[152] *Henderson*, 562 U.S. at 440.

[153] *See Bufkin v. Collins*, 604 U.S. 369, 391-98 (2025) (Jackson, J., dissenting) (observing that nondeferential review of whether VA properly applied the law minimizes the risk that veterans will be denied benefits to which they are entitled).